**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF PUERTO RICO**

| | |
|---|---|
| NORTHWESTERN SELECTA, INC. | CIVIL NO. _____ |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTION** |
| v. | |
| SECRETARY OF THE DEPARTMENT AGRICULTURE OF PUERTO RICO, Ramón González Beiró, and DEPUTY SECRETARY OF THE DEPARTMENT OF AGRICULTURE OF PUERTO RICO, Alex Muñiz Lasalle. | |
| Defendants, | |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** Plaintiff, Northwestern Selecta, Inc. ("Plaintiff", "Northwestern Selecta", or "NWS"), through undersigned counsel, and very respectfully alleges and prays as follows:



### Introduction

1.     NWS brings this action for injunctive and declaratory relief from the Puerto Rico Department of Agriculture's Market Regulation No. 8. That regulation is preempted, in part or in whole, by the Poultry Products Inspection Act ("PPIA"), 21 U.S.C.A. §§ 451-469. It also violates the Commerce Clause of the U.S Constitution because it places an undue burden on interstate commerce while advancing no legitimate local interest.

2.     NWS thus seeks a declaratory judgment and an injunction against the enforcement of Market Regulation No. 8.

3.     The relief sought by NWS in this action is strictly for a declaratory judgment and permanent injunctive relief against the named defendant state officials, in their official capacity only. NWS does not seek monetary damages; only the vindication of its federal rights.

4.     The Puerto Rico Department of Agriculture ("PRDA") has a history of attempting to illegally enforce requirements of Market Regulation No. 8 that are obviously preempted by the PPIA. In June 2000, NWS successfully obtained a judgment from this Honorable Court precluding the Secretary of the PRDA from enforcing the prior iteration of Market Regulation No. 8 (the current iteration was promulgated in 2016) to the extent that it imposed requirements in addition to the marking requirements established by the PPIA. Nw. Selecta, Inc. v. Muñoz, 106 F. Supp. 2d 223 (D.P.R. 2000). That judgment covered Section V of the Regulation, which at the time read in pertinent part: "The certificates or documents required on Subsections A of Section IV shall indicate among other things, the following: [...] 3. Whether the product is fresh (not frozen) or frozen." At that time, NWS had been compelled to file the Muñoz action in this Honorable Court because the Secretary of the PRDA had insisted on enforcing certain marking requirements of Market Regulation No. 8 even after the United States Department of Agriculture had *twice* advised the PRDA *in writing* that such requirement was preempted under the PPIA.

5.     Undaunted, the Secretary and Deputy Secretary of the PRDA are now illegally enforcing certain labeling and re-inspection requirements of the new iteration of Market Regulation No. 8, even after NWS has advised them that such requirements are just as clearly preempted as the marking requirement at issue was in the Muñoz case. NWS has regrettably been left with no choice but to once again turn to this Honorable Court to enjoin the Secretary and Deputy Secretary of the PRDA from their actions.

**Jurisdiction and Venue**

6.    This Honorable Court has original jurisdiction over the present action by virtue of the PPIA, and under 28 U.S.C. §§ 1331, 1337(a), and 1343(a)(3).

7.    Venue is also proper in this District under 28 U.S.C. § 1391 because the named Defendants are officers of the Commonwealth of Puerto Rico and sued exclusively in their official capacity, and a substantial part of the events giving rise to this action occurred in this district.

**The Parties**

8.    Plaintiff Northwestern Selecta is a corporation created and organized under the laws of the Commonwealth of Puerto Rico and engaged in the business of importing and distributing food products in Puerto Rico. It has its principal place of business (**the "NWS Facilities"**) at 769 Calle C, Mario Juliá Industrial Park, San Juan, Puerto Rico 00920, and its telephone number is 787-781-1950.

9.    Defendant Ramón González Beiró, sued in his official capacity only, is the Secretary of the PRDA ("the PRDA Secretary"). His address is: 1309 Ave Fernández Juncos, San Juan, 00908.

10.    Defendant Alex Muñiz Lasalle, sued in his official capacity only, is the Deputy Secretary of the PRDA ("the PRDA Deputy Secretary"). His address is: 1309 Ave Fernández Juncos, San Juan, 00908.

**The Poultry Products Industry in Puerto Rico**

11.    Poultry food products are an important source of Puerto Rico's food supply. Upon information and belief, over 350 million pounds of poultry food products are consumed annually

in Puerto Rico, approximately 80% of which is imported. As such, Puerto Rico relies heavily on imports for poultry food products.

12.    Since at least mid-2021, the supply chain of poultry food products in Puerto Rico has been impacted by the ongoing COVID-19 pandemic and a labor-management dispute involving dock workers at the San Juan Port, among other issues. Many Puerto Rico wholesalers and retailers have thus been unable to consistently meet what is currently an extraordinary level of consumer demand of poultry food products, resulting in shortages and rising prices, to the detriment of the people of Puerto Rico.

### Northwestern Selecta's Imports of Poultry Food Products in Puerto Rico

13.    NWS has dedicated itself for the past forty-one (41) years to import poultry products for local consumption. As such, NWS constitutes an integral and indispensable part of the poultry industry of Puerto Rico and in supplying a vital food product to Puerto Rico.

14.    NWS imports fresh and frozen poultry products domestically from within the United States, as well as frozen poultry products from foreign countries.

15.    The poultry products arrive by sea freight at the Port of San Juan, where NWS receives and unloads a weekly average of fifty (50) shipping containers at the Port of San Juan.

16.    Most NWS shipping containers containing poultry products also contain other food products (for example, pork).

17.    When a cargo ship arrives at the docks at the Port of San Juan, each shipping container must be cleared by the necessary government authorities (including the USDA, the PRDA, and in the case of international freight, U.S. Customs).

18.    Once an NWS shipping container is cleared, it is offloaded directly to the NWS Facilities.

19.    The NWS Facilities are certified as an "official establishment" by the United States Department of Agriculture ("USDA"). An "official establishment" is defined by the PPIA as "any establishment as determined by the Secretary [of the USDA] at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of this chapter." 21 U.S.C. § 453(p).

20.    Poultry products, whether fresh or frozen, must always be temperature controlled.

21.    Typically, NWS stores its poultry products at the NWS Facilities in a temperature-controlled area, where NWS makes them available for inspection as may be required.

22.    Typically, once the poultry products have been duly inspected, NWS loads them into its trucks for distribution to both wholesale and retail stores throughout the island.

23.    In the case of *fresh* poultry products, it is essential to distribute them as soon as possible since they have a limited shelf life.

24.    Oftentimes, NWS has already sold fresh poultry products to wholesalers or retailers prior to their arrival, which in turn are relying on timely delivery of the products to meet high consumer demand.

### The Poultry Products Inspection Act

25.    The congressionally declared purpose of the PPIA is to provide for the inspection of poultry and poultry products and otherwise regulate the processing of such articles to prevent the movement or sale in interstate commerce of adulterated or misbranded poultry products. 21

5

U.S.C. § 452.

26.    To that end, the PPIA, *inter alia*, provides for the inspection of poultry products both *ante mortem* and *post mortem* in "official establishments" and establishes requirements for labeling and marking of poultry products. 21 U.S.C. §§ 455, 457-458.

27.    The PPIA's contains an express preemption clause which provides as follows:

> **Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory or the District of Columbia,** except that any such jurisdiction may impose recordkeeping and other requirements within the scope of paragraph (b) of section 460 of this title, if consistent therewith, with respect to any such establishment. **Marking, labeling, packaging, or ingredient requirements** (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) **in addition to, or different than, those made under this chapter may not be imposed by any State or Territory or the District of Columbia with respect to articles prepared at any official establishment in accordance with the requirements under this chapter,** but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter exercise **concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded and are outside of such an establishment,** or, in the case of imported articles which are not at such an establishment, after their entry into the United States. This chapter shall not preclude any State or Territory or the District of Columbia from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.

21 U.S.C. § 467(e) (emphasis added).

28.    The Secretary of the USDA delegates to the Food Safety and Inspection Service ("FSIS"), an agency of the USDA, the responsibility for exercising the functions of the Secretary

of Agriculture under the PPIA. This includes implementing by regulation the provisions of the PPIA.  9 C.F.R. § 300.2.

### The Puerto Rico Department of Agriculture's Market Regulation No. 8

29.     On June 24, 2016, the Puerto Rico Department of Agriculture promulgated Market Regulation No. 8 ("Regulation 8"), registered with the Puerto Rico Department of State as Regulation No. 8764, under color of Puerto Rico Law No. 241 of May 8, 1950. A copy of Regulation 8 is attached as **Exhibit 1A (certified translation attached as Exhibit 1B)**.

30.     Regulation 8 contains a myriad of provisions that are preempted by the PPIA and/or violate the Commerce Clause to the extent the PRDA decides to enforce them. There are two such provisions that the Secretary and Deputy Secretary of the PRDA are enforcing illegally against NWS as of present date: Article XIV(A)(6), which concerns labeling requirements for packaged poultry products; and Article XII(B), which concerns PRDA inspection of poultry products at the NWS Facilities.

31.     Article XIV(A)(6) and Article XII(B) are both preempted by the PPIA because they create requirements "in addition to, or different than" those under the PPIA or the underlying FSIS regulations.

### FSIS's Pertinent Labeling Regulations and Defendants' Ongoing Illegal Enforcement of Article XIV(A)(6)

32.     Regulation 8, in pertinent part, prohibits imported poultry to be labeled as "Keep Refrigerated or Frozen". See Regulation 8, Article XIV(A)(6).

33.     FSIS, however, has promulgated extensive regulations concerning the labeling of poultry products. FSIS inspects and approves poultry product labels, and a label must be approved by FSIS (and hence, cannot thereafter be changed) before poultry products bearing that

7

label are sold in interstate commerce. 9 C.F.R. §§ 381.115, 412.1(a).

34.    FSIS requires that "packaged products which require special handling to maintain their wholesome condition shall have prominently displayed on the principal display panel of the label the statement: 'Keep Refrigerated,' 'Keep Frozen,' 'Keep Refrigerated or Frozen,' 'Perishable—Keep Under Refrigeration,' or such similar statement as the Administrator[1] may approve in specific cases […]." 9 C.F.R. § 381.125(a).

35.    All poultry products that NWS imports from within the United States have already been inspected and passed by the USDA-FSIS on the mainland and bear an official mark to that effect, prominently displaying on the principal display panel of the label the content required by FSIS regulations. 9 C.F.R. §§ 381.123, 381.145.

36.    Accordingly, all poultry products that NWS imports from within the United States have labeling approved by FSIS and have been inspected on the mainland to so ensure.

37.    Under color of Article XIV(A)(6) of Regulation 8, on December 7, 2021 the PRDA Deputy Secretary, through its inspectors, issued several Orders of Detention impounding over 7,000 pounds of fresh poultry products imported from within the U.S. by NWS. See **Exhibit 2A (certified translation attached as Exhibit 2B)**. The grounds for the Order of Detention were that the products were labeled as "Keep Refrigerated or Frozen" in violation of Article XIV(A)(6) of Regulation 8. Moreover, according to the Deputy Secretary, for NWS to request the release of the detained poultry, it must re-label the products as "Keep Fresh."

38.    Even after being advised by NWS that Article XIV(A)(6) is invalid and preempted by the PPIA, the Deputy Secretary refused to rescind the Orders of Detention until the

products were re-labeled as "Keep Fresh." Consequently, the fresh poultry products at issue could not enter commerce in Puerto Rico until released by the PRDA upon re-labeling.

39.    Indeed, the PRDA Deputy Secretary impounds all fresh poultry products imported from within the U.S. by NWS bearing the label "Keep Refrigerated or Frozen" until they are re-labeled as per Article XIV(A)(6).

40.    Article XIV(A)(6) is in direct contravention with FSIS regulations which expressly allows the "Keep Refrigerated or Frozen" labeling, 9 C.F.R. § 381.125(a), and as such is preempted by the PPIA which expressly prohibits any State or Territory from imposing any labeling requirements "in addition to, or different than" those established by the FSIS under color of the PPIA. See 21 U.S.C. § 467(e).

41.    Moreover, requiring NWS to change the labeling of the referenced products upon receipt in Puerto Rico to make the labeling consistent with Article XIV(A)(6) requires changes to poultry labels approved by FSIS; indeed, such changes violate FSIS regulations and circumvent FSIS pre-approval process for labeling.

42.    Further still, the PRDA Deputy Secretary impounds all fresh poultry products imported from within the U.S. by NWS bearing the label "Keep Refrigerated or Frozen" and then releases them upon re-labeling *without a PRDA inspector ever inspecting the products to ascertain whether they are adulterated or misbranded.*

43.    The process of re-labeling fresh poultry products imported from within the U.S. is extremely burdensome for NWS inasmuch as it takes a significant amount time and resources and thus causes undue delays in the distribution of the fresh poultry, which has a limited shelf

---

[1] "Administrator" means the Administrator of the FSIS. 9 C.F.R. § 300.3.

life. Relabeling (the word "or refrigerated" must be covered) must take place for all containers, including poultry products destined for institutional use (e.g., hospitals) and for the retail market (e.g., supermarkets).

44.    The Deputy Secretary's illegal enforcement of Article XIV(A)(6) requires NWS to alter the federally pre-approved label in contravention to FSIS regulations.

45.    Several of NWS's suppliers of fresh poultry uses the label "Keep Refrigerated or Frozen." In the case of at least one of those suppliers, it is the only available supplier for a specific and popular poultry product for retail distribution.

46.    Several of NWS's clients in Puerto Rico specifically request NWS to provide fresh poultry products that can only be supplied from one of these suppliers.

47.    Consequently, NWS has been implicitly compelled to diminish and/or discontinue purchasing fresh poultry from the suppliers in question. This has negatively impacted NWS's ability to purchase, import and distribute in Puerto Rico enough fresh poultry on a timely basis to meet skyrocketing local demand, to the detriment of the people of Puerto Rico.

**FSIS's Pertinent Reinspection Regulations and Defendants' Ongoing Illegal Enforcement of Article XII(B)**

48.    FSIS has established that "[i]nspection of poultry products shall be rendered pursuant to the regulations and under such conditions and in accordance with such methods as may be prescribed or approved by the Administrator." 9 C.F.R. § 381.4.

49.    The inspection process done in accordance with the requirements established by the statute and its regulatory scheme is the key element in obtaining the goals which this piece of legislation aims to achieve the nationwide distribution of wholesome, unadulterated poultry products. See, e.g. Nw. Selecta, Inc. v. Muñoz, 106 F. Supp. 2d 223, 231 (D.P.R. 2000).

50.     Under the PPIA as well as FSIS regulations, inspection (in order to ensure poultry products in interstate commerce are not misbranded or adulterated) is required at any establishment in which any poultry is slaughtered for transportation or sale in commerce, or in which any poultry products are wholly or in part processed for transportation or sale in commerce. 21 U.S.C. § 458(a)(2); 9 C.F.R. §§ 381.6, 381.145.

51.     Moreover, all slaughtered poultry and poultry products offered for entry from any foreign country must be inspected by an FSIS inspector before they shall be allowed entry into the United States. 9 C.F.R. § 381.199.

52.     Necessarily, then, all poultry products that NWS imports from within the United States have already been inspected and have passed inspection by the USDA-FSIS on the mainland prior to shipping to Puerto Rico, as they were produced in a federally inspected establishment in the mainland and passed inspection to be shipped in interstate commerce.

53.     Indeed, such products bear an official mark confirming that they have passed federal inspection, as required by FSIS regulations. 9 C.F.R. §§ 381.123, 381.145.

54.     Any inspection of poultry products that NWS imports from within the United States upon arrival to Puerto Rico is by FSIS definition a *reinspection*.

55.     FSIS has promulgated, and has the authority to promulgate, a broad range of regulations that directly address *reinspection* procedures.

56.     FSIS employees may reinspect poultry products as often as they deem necessary to ascertain that the products are not adulterated or misbranded at the time they enter or leave "official establishments." 9 C.F.R. §§ 318.2, 381.145.

57.     Notwithstanding, FSIS officers have confirmed in writing to NWS as recently as

the week of February 14, 2022 that FSIS does not typically conduct reinspections for domestic poultry products (that is, imported from the mainland) arriving at Puerto Rico, and to the extent that they do, it is limited to a brief visual inspection to ascertain if the products are misbranded or adulterated.

58.     Article XII of Regulation 8, in pertinent part, requires that any imported poultry products shall be inspected upon arrival to Puerto Rico *and that a Puerto Rico Department of Agriculture inspector be physically present when the corresponding shipping container is opened for the first time and when it is unloaded.*

59.     This requirement applies only to domestic poultry products (that is, imported from the mainland) arriving at Puerto Rico, which as established above have already been inspected and passed inspection by USDA-FSIS on the mainland and bear an official mark to that effect.

60.     For over a decade, NWS has typically followed the same procedure when shipping containers with poultry products imported from within the U.S. They are offloaded from cargo ships to the NWS Facilities, *with the acquiescence of USDA-FSIS and the PRDA.* First, NWS personnel promptly notify USDA-FSIS and PRDA that a shipping container will be arriving, when it has arrived, and when it is ready for inspection. In the interim and while waiting for inspectors to arrive at the premises, NWS personnel open the shipping containers forthwith at the NWS Facilities *without the presence of any inspector* (but with PRDA's knowledge and acquiescence) unloads the products, and keeps certain pallets of the poultry products at a staging area until they can be inspected by a PRDA inspector upon his/her arrival. If requested, the inspection of the full lot would then take place at the coolers where the product was already stocked.

12

61.     Unilaterally and without notice or cause, and purportedly under color of Article XIV(A)(6) of Regulation 8, on June 30, 2021, the PRDA Deputy Secretary, through its inspectors, altered the long-standing procedure followed by the parties herein and issued several Orders of Detention, impounding over two hundred thousand (200,000) pounds of fresh poultry products imported by NWS from within the United States. See **Exhibit 3A (certified translation attached as Exhibit 3B)**. The grounds for the Orders of Detention were that a PRDA inspector was not physically present when the shipping container was opened and unloaded, in violation of Article XII(B) of Regulation 8.

62.     The products were released two days later by the PRDA but were not inspected prior to their detention by a PRDA inspector to determine whether they were misbranded or adulterated.

63.     Although Regulation 8 has been in effect since 2016, it was not until June 30, 2021, that the PRDA Secretary began to enforce Article XII (B), at least as to NWS. Prior to June 2021, no officer of the PRDA had enforced or sought to enforce Article XII(B) of Regulation 8 against NWS nor, upon information and belief, any other importer of fresh poultry in Puerto Rico.

64.     Moreover, the PRDA Deputy Secretary has continued to enforce Article XII(B) of Regulation 8 against NWS. So far in the year 2022, the PRDA Deputy Secretary has issued Notices of Violation and Order to Show Cause with respect to twenty-three (23) shipping containers containing poultry products imported from within the U.S. that have been opened and unloaded by NWS at the NWS Facilities without the presence of a PRDA inspector, purporting to impose fines of up to $213,000 in total.

13

65.     In other words, the PRDA Deputy Secretary has interpreted Article XII(B) of Regulation 8 so as to effectively prohibit any and all NWS containers with poultry products imported from the mainland, which as established above have already been inspected and passed inspection by the USDA or FSIS on the mainland and bear an official mark to that effect, from being opened unless the PRDA inspector is present; effectively detaining all such containers (some of which also contain other non-poultry products).

66.     NWS is currently receiving an average of 6-8 shipping containers per week of fresh poultry. Those shipments are threatened by the PRDA Deputy Secretary's actions.

67.     To compound matters, upon information and belief, the PRDA Secretary is enforcing Article XII(B) disparately, given that he has negotiated mutually agreeable "arrangements" with other Puerto Rico importers of poultry products.

68.     The presence of an inspector (federal or state) when opening and unloading the shipping container is not required in any part of the PPIA or the FSIS regulations as to inspection or reinspection.

69.     Therefore, allowing the PRDA Secretary and/or PRDA Deputy Secretary to impose Regulation 8's inspection protocol as to the presence of a PRDA inspector when opening and unloading the shipping container requires NWS to conform to a different protocol than the one properly developed by FSIS under federal law.

70.     Moreover, such requirement substantially impacts operations at the NWS Facilities, which are an "official establishment" under FSIS regulations. PRDA inspectors oftentimes fail to arrive at the NWS Facilities in a timely manner regardless of sufficient prior notice from NWS that a given shipping container has arrived and is ready to be inspected. This

14

tardiness thus causes undue delays in the unloading and distribution of the poultry products (which in the case of fresh poultry, have a limited shelf life). That impact is compounded by the fact that NWS receives and unloads a large amount of containers (on average, 50 per week). The undue delay in unloading a given container thus spills over to the next containers in the queue (which do not necessarily contain poultry products) which NWS then does not have space to unload even though they are ready to be unloaded.

71.     The PRDA inspectors' tardiness also often forces NWS employees to incur overtime as they must wait for the PRDA inspectors to arrive for the containers to be unloaded, which at times can be five containers in a single day. As an example, there was an incident during the week of February 21, 2022 where NWS provided PRDA with sufficient prior notice of the arrival of five (5) shipping containers and the inspector, although advising he would arrive shortly, was several hours late, which forced NWS to incur at least three hours of overtime in order to unload the cargo.

72.     Article XII(B) is preempted by the PPIA inasmuch as it imposes a reinspection requirement "in addition to, or different than" the reinspection requirements established by the FSIS under color of the PPIA. 21 U.S.C. § 467(e).

73.     Further, under the PPIA's express preemption clause, the States' concurrent jurisdiction is strictly limited to *enforcing* PPIA requirements – that is, ensuring that poultry products are not misbranded or adulterated. See Nat'l Broiler Council v. Voss, 44 F.3d at 746. Accordingly, States can impose sanctions for violations of state requirements that are equivalent to the PPIA's requirements. Kuenzig v. Kraft Foods, Inc., Civil No. 8:11-CV-838-T-24, 2011 WL 4031141, at *4 (M.D. Fla. Sept. 12, 2011).

74.    Article XII(B), however, bears no relation to such enforcement. Rather, the PRDA Secretary and/or PRDA Deputy Secretary impose sanctions automatically if the shipping container is opened and unloaded without a PRDA inspector physically present, *regardless of whether the poultry products are misbranded or adulterated*. Indeed, when the PRDA Secretary and/or PRDA Deputy Secretary have issued sanctions for noncompliance with Article XII(B), they have **never** been due to a finding that the poultry products were misbranded or adulterated. Such sanctions, then, are not sanctions for violation of PPIA or FSIS requirements, but rather for violation of arbitrary PRDA *procedures*.

75.    Worse still, Regulation No. 8 is devoid of any rationale explaining *how or why* the opening and/or unloading of a shipping container without a PRDA inspector physically present impedes the FSIS or PRDA from inspecting poultry products to ensure that they are not misbranded or adulterated. As such, Article XII is contrary to the PPIA and cannot stand.

76.    Regardless, PRDA's purported inspection at the NWS Facilities (certified as an "official establishment" by USDA-FSIS) is illegal *per se* as preempted by the PPIA. The States' concurrent jurisdiction to ensure that poultry products are not misbranded or adulterated is expressly    limited    by    the    PPIA    to    *exclude*    inspections    within    the "official establishment" ("but any State or Territory or the District of Columbia may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded *and are outside of such an establishment*," 21 U.S.C. § 467(e) (emphasis added).

77.    Therefore, the PRDA lacks jurisdiction to unilaterally inspect poultry products

inside the NWS Facilities (much less to dictate under what conditions NWS may open the shipping containers) *even if* the purpose of the inspection is to ensure that the products are not misbranded or adulterated.

### First Cause of Action – Preemption under the PPIA

78.     Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

79.     The Supremacy Clause of the United States Constitution provides that "the Laws of the United States … shall be the supreme Law of the Land." U.S. Const. art. VI, cl. 2. Under the Supremacy Clause, state and municipal laws that conflict with federal law are preempted and are thus without effect.

80.     Preemption can be express, as when a federal law declares that it preempts state or municipal laws, or implied. State or municipal laws are impliedly preempted whenever they conflict in their operation with federal law.

81.     By attempting to regulate and intrude in the labeling of poultry products that NWS imports from within the United States and reinspection protocols of such products upon arrival to Puerto Rico, the PRDA Secretary and Deputy Secretary have chosen to disregard and contradict the regulatory judgment of USDA-FSIS. They have instead persisted in requiring NWS to meet *additional* requirements that are specifically preempted by the PPIA and beyond the scope of the Secretary and the Deputy Secretary's authority.

82.     Accordingly, declaratory and injunctive relief is warranted ordering the PRDA Secretary, Deputy Secretary, their agents and employees to refrain from enforcing any portion of Regulation 8 – including but not limited to Article XII(B) and Article XIV(A)(6) – that imposes

requirements with respect to premises, facilities and operations of an NWS "official establishment" (as defined by the PPIA) and/or with respect to marking, labeling, packaging, or ingredients of poultry products imported from within the U.S., if such requirements are in addition to, or different than those made under the PPIA, unless such enforcement is for the purpose of preventing the distribution for human food purposes of any poultry products which are adulterated or misbranded *and* is outside of an NWS "official establishment."

**Second Cause of Action – Violation of the Commerce Clause – Interstate Commerce**

83.    The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." Art. I, § 8, cl. 3. The main purpose of the Commerce Clause is to foster economic integration and prevent local interference with the flow of the nation's commerce. Trailer Marine Transport Corp. v. Rivera Vázquez, 977 F.2d 1, 8 (1st Cir. 1992).

84.    Although the Commerce Clause thus speaks in terms of powers bestowed upon Congress, the Supreme Court has long recognized that it also limits the power of the States to erect barriers against interstate trade. Maine v. Taylor, 477 U.S. 131, 137 (1986).

85.    The "negative" or "dormant" aspect of the Commerce Clause prohibits States from advancing their own commercial interests by curtailing the movement of articles of commerce, either into or out of the state. Fort Gratiot Landfill v. Michigan Department of Natural Resources, 504 U.S. 353, 359 (1992).

86.    By prohibiting States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval, it strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate

commerce." Comptroller of the Treasury v. Wynne, 575 U.S. 542, 549 (2015).

87.    Puerto Rico is subject to the limitations imposed by the Commerce Clause. United Egg Producers v. Department of Agriculture, 77 F.3d 567, 569 (1st Cir. 1996).

88.    Regulation 8 places excessive and undue burdens on interstate commerce by automatically removing from interstate commerce all poultry products imported from within the US that bear a label pre-approved by FSIS under federal law (that is, the USDA seal of inspection), without advancing any legitimate local interest.

89.    Indeed, inasmuch as the enforcement of such requirement is preempted by federal law, there can be no possible legitimate local interest to justify the burden placed on interstate commerce.

90.    Regulation 8 also places excessive and undue burdens on interstate commerce by removing from interstate commerce all poultry products unloaded from a shipping container in Puerto Rico with a PRDA inspector present and/or deterring the import of such products into Puerto Rico by enforcing said burdensome and unreasonable requirement, without advancing any legitimate local interest.

91.    Moreover, the undue delay caused in the opening of the shipping containers impacts the non-poultry products or commodities that are also in those containers and do not require the same purported inspection under Regulation 8.

92.    The unloading and distribution of those products is also needlessly and unreasonably delayed in interstate commerce, to the detriment of the people of Puerto Rico.

93.    Indeed, inasmuch as the enforcement of such requirement is preempted by federal law, there can be no possible legitimate local interest to justify the burden placed on interstate

commerce.

94.    As such, Regulation No. 8 is unconstitutional on its face and as applied to NWS for the reasons stated above.

**WHEREFORE**, Plaintiff requests this Honorable Court to:

i.    issue a declaratory judgment holding that Regulation 8 and any other Puerto Rico law or regulation are preempted by the PPIA to the extent that they:

  a.    seek to impose marking, labeling, packaging, or ingredient requirements for poultry products imported from within the U.S. (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) that are in addition to, or different than USDA or FSIS requirements; and/or

  b.    seek to impose any requirement for reinspection of poultry products imported from within the U.S. at any official establishment that impacts the premises, facilities and operations of such official establishment *and* is in addition to, or different than USDA-FSIS requirements,



ii.    issue a preliminary and permanent injunction against the PRDA Secretary, the PRDA Deputy Secretary and anyone acting on their behalf, prohibiting any of them from:

  a.    requiring NWS to comply with any requirements in connection with marking, labeling, packaging, or ingredient for poultry products imported from within the U.S. (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) that are in addition to, or different than USDA or FSIS requirements; as it is preempted

by the PPIA and its regulations;

b.  requiring NWS to comply with any requirement for reinspection of poultry products imported from within the U.S. at any official establishment that impacts the premises, facilities and operations of such official establishment *and* is in addition to, or different than USDA or FSIS requirements; as it is preempted by the PPIA and its regulations;

c.  prosecuting any action or levying any sanctions against NWS for its alleged failure to comply with local laws and regulations pertaining to marking, labeling, packaging, or ingredient for poultry products imported from within the U.S. (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) that are in addition to, or different than USDA or FSIS requirements, as it is preempted by the PPIA, and its regulations;

d.  prosecuting any action or levying any sanctions against NWS for its alleged failure to comply with local laws and regulations pertaining to reinspection of poultry products imported from within the U.S. at any official establishment that impacts the premises, facilities and operations of such official establishment *and* is in addition to, or different than USDA or FSIS requirements, as it is preempted by the PPIA, and its regulations;



e.  regulating or intruding with the import, unloading, release for distribution, disposition, entry or movement within Puerto Rico or in interstate commerce of poultry products imported from within the U.S. to the extent such

regulation or intrusion is in addition to, or different than USDA or FSIS regulations, as it is preempted by the PPIA and its regulations;

f. enforcing any portion of Regulation 8 – including but not limited to Article XII(B) and Article XIV(A)(6) – that imposes requirements with respect to premises, facilities and operations of an NWS "official establishment" (as defined by the PPIA) and/or with respect to marking, labeling, packaging, or ingredients of poultry products imported from within the U.S., if such requirements are in addition to, or different than those made under the PPIA, unless such enforcement is for the purpose of preventing the distribution for human food purposes of any poultry products which are adulterated or misbranded *and* is outside of an NWS "official establishment."



iii. award attorneys' fees and costs in Plaintiff's favor, including any other relief that this Court may find just and proper.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 23rd day of February 2022.

**MÉNDEZ LLC**
Banco Popular Center
208 Ave. Ponce de León, Piso 18
San Juan, Puerto Rico, 00918
Tel. (787) 505-0644

s/NÉSTOR M. MÉNDEZ GÓMEZ
Néstor M. Méndez-Gómez
USDC No. 118409
nmmendezgomez@gmail.com

## **VERIFICATION**

I, Elpidio Núñez Batista, President of Northwestern Selecta, Inc., pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that I have read the foregoing allegations of this Verified Complaint and the foregoing statements are true and exact to the best of my knowledge and recollections.

Executed in San Juan, Puerto Rico, on this 23rd day of February, 2022.

_____
Elpidio Núñez Batista