**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| NORTHWESTERN SELECTA, INC.<br><br>**Plaintiff**<br><br>v.<br><br>SECRETARY OF THE DEPARTMENT AGRICULTURE OF PUERTO RICO, Ramón Gonzalez Beiró, and DEPUTY SECRETARY OF THE DEPARTMENT OF AGRICULTURE OF PUERTO RICO, Alex Muñiz Lasalle.<br><br>**Defendants** | **CIVIL NO.** 22-1092(RAM) |

**OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending the before the Court is Plaintiff's *Urgent Motion Requesting Emergency Relief Due to Illegal Enforcement of Regulation 8* ("*Motion Requesting Emergency Relief*"). (Docket No. 35). For the following reasons, Plaintiff's request for a preliminary injunction barring the enforcement of Regulation 8's labeling and marketing requirements is **GRANTED**.

## I. BACKGROUND

Northwestern Selecta, Inc.'s ("Plaintiff" or "NWS") filed a *Verified Complaint* against the Secretary and Deputy Secretary of the Puerto Rico Department of Agriculture ("PRDA"), Ramón González-Beiró and Alex Muñiz-Lasalle, respectively ("Defendants"), seeking injunctive and declaratory relief from

PRDA Market Regulation No. 8, registered with the Puerto Rico Department of State as Regulation No. 8764 titled "To Govern the Quality and Marketing of Poultry Meat in the Commonwealth of Puerto Rico" ("Regulation 8" or "Regulation No. 8764"). (Docket No. 1).

Plaintiff argues that Regulation 8, which purportedly governs the quality and marketing of poultry meat in Puerto Rico, is preempted by the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451-469, and the regulations promulgated thereunder by the Food Safety and Inspection Service ("FSIS"). Id. ¶¶ 1, 28, 31. NWS specifically challenges Articles XIV(A)(6) and XII(B) of PRDA's Regulation 8 for imposing requirements "in addition to, or different than" those established by the PPIA. Id. ¶ 31. Article XIV(A)(6) prohibits imported poultry from being labeled as "Keep Refrigerated or Frozen" despite the fact that FSIS regulation at 9 C.F.R. § 381.125(a) allows such labeling. Id. ¶¶ 32, 34. Similarly, Plaintiff asserts that Article XII(B) imposes additional "re-inspection" requirements beyond those established by PIPA and FSIS regulations. Id. ¶ 48-56.

Pursuant to this Court's order at Docket No. 6, the parties filed joint factual and document stipulations. (Docket No. 14-1). Plaintiff filed a *Memorandum in Support of Request for Injunction* and Defendants filed a brief in opposition. (Docket Nos. 23 and 24).

Subsequently, NWS filed the present *Motion Requesting Emergency Relief* notifying the Court that the PDRA detained over 40,000 lbs of poultry products for containing the label "Keep refrigerated or frozen". (Docket No. 35). Plaintiff asks the Court to issue the proposed permanent injunction as requested in the *Verified Complaint* or alternatively issue an order, *i.e.,* preliminary injunction, barring the PRDA from enforcing Regulation 8's provisions regarding the labeling and packaging of poultry products until the Court issues a ruling resolving the case. Id. ¶¶ 11-12.

## II.   FINDINGS OF FACT

Fed. R. Civ. P. 52(a) requires that courts must state the findings that support its decision in granting or refusing an interlocutory injunction. Having analyzed the relevant pleadings on the docket, and the stipulations filed by the parties, the Court makes the following findings of fact[1]:

1. The NWS facilities located at 769 Calle C, Mario Juliá Industrial Park, San Juan, Puerto Rico 00920 are certified as an "official establishment" by the United States Department of Agriculture. (Docket No. 14-1 ¶ 1).

---

[1] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

2. NWS imports fresh and frozen poultry products domestically from within the United States, as well as frozen poultry products from foreign countries. Id. ¶ 2.

3. PRDA detained fresh poultry products from within the US by NWS bearing the label "Keep Refrigerated or Frozen" and did not allow NWS to distribute the products in Puerto Rico unless they were re-labeled with a label that reads "Keep Refrigerated" or "Keep Frozen." Id. ¶ 5.

4. On December 7, 2021, the PRDA Deputy Secretary, through its inspectors, issued several Orders of Detention impounding over 7,000 pounds of fresh poultry products at the NWS facilities which had been imported from within the U.S. by NWS. The grounds for the Order of Detention were that the products were labeled as "Keep Refrigerated or Frozen" in violation of Article XIV(A)(6) of Regulation 8. Id. ¶ 6.

5. On June 30, 2021, Alex Muñiz, acting as Deputy Secretary for Agro-Commercial Integrity, notified NWS that it had violated Regulation 8764, and its intent to fine NWS with $500.00 fines for each violation. Id. ¶ 13.

6. On July 1, 2021, the PRDA rescinded the detention orders. The detained product entered commerce. Id. ¶ 14.

7. On July 20, 2021, NWS filed a motion to reconsider with the PRDA where it argued, among other grounds that

       Regulation 8764 was preempted by Federal Law and regulations. Id. ¶ 15.

8. On August 19, 2021, the PRDA vacated without prejudice the notices of violations. Id. ¶ 16.

9. On August 30, 2021, the PRDA issued a notice of violation and an order to NWS to show cause why it should not be held in violation of Regulation 8764. Id. ¶ 17.

10. On September 14, 2021, NWS filed its motion showing cause where it argued, among other grounds, that Regulation 8764 was preempted by Federal Law and regulations. Id. ¶ 18.

11. On October 14, 2021, the PRDA issued a resolution and order that denied the motion showing cause and imposed the fines for each violation to Regulation 8764. Id. ¶ 19.

12. On November 15, 2021, NWS requested reconsideration with respect to the October 14, 2021 resolution and order, reiterating that the fines were preempted by federal law. Id. ¶ 20.

13. On January 10, 2022, the PRDA filed its answer to the administrative complaint. In it, PRDA asserted, among other things, that the administrative forum was "not the adequate forum" to resolve NWS's claims of federal preemption. Id. ¶ 21.

14. On January 20, 2022, the PRDA's examining officer issued an order scheduling an initial scheduling conference for February 2, 2022. Id. ¶ 22.

15. On February 2, 2022, an initial scheduling hearing was held. Id. ¶ 23.

16. On December 15, 2022, the PRDA issued an Order for Detention notifying NWS that it had detained 908 boxes of full chicken totaling 49,761.11 lbs for failing to comply with Regulation 8's labeling requirements because the chicken in its individual packaging as the terms "Keep frozen or refrigerated." (Docket No. 30-1).

### III. APPLICABLE LAW

**A. Preemption**

The Supremacy Clause of the United States Constitution states that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Arti. VI, cl.2. By virtue of this clause, "the Constitution provides Congress with the power to pre-empt [sic] state law." Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 357 (1986). However, "[f]ederal law is presumed not to have

preemptive effect, and that presumption is overcome 'only in the face of clear and contrary congressional intent.'" Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of Puerto Rico, 437 F. Supp. 3d 119, 127 (D.P.R. 2020) (quoting Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012). *See also* Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963).

Congress may indicate its intent to preempt state law or regulations "through a statute's express language or through its structure and purpose." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008). Accordingly, a federal statute can preempt state law in one of three ways: (1) express preemption whereby "congressional intent to preempt state law is made explicit in the language of a federal statute[;]" (2) field preemption when "federal regulation in a legislative field is so pervasive that congressional intent allows no inference that it left room for the states to supplement it[;]" or (3) conflict preemption which may arise "when it is impossible to comply with both federal and state law" or "when the state law stands as an obstacle to achieving the objectives of federal law." In re Allied Fin., Inc., 572 B.R. 45, 52-53 (Bankr. D.P.R. 2017) (citations omitted). *See also* Siembra Finca Carmen, LLC., 437 F. Supp. at 127–28.

**B. The PPIA and related regulations**

The general purpose of the PPIA is "to provide for the inspection of poultry and poultry products and to regulate their

processing and distribution to prevent the movement or sale in interstate or foreign commerce of such products which are adulterated or misbranded." <u>Nw. Selecta, Inc. v. Munoz</u>, 106 F. Supp. 2d 223, 228 (D.P.R. 2000) (citing 21 U.S.C. § 452).

In its relevant part, the PPIA's preemption clause provides:

> **Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory** or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of paragraph (b) of section 460 of this title, if consistent therewith, with respect to any such establishment. **Marking, labeling**, packaging, or ingredient **requirements […] in addition to, or different than, those made under this chapter may not be imposed by any State or Territory** or the District of Columbia **with respect to articles prepared at any official establishment** in accordance with the requirements under this chapter, **but any State or Territory** or the District of Columbia **may, consistent with the requirements under this chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded** and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States. **This chapter shall not preclude any State or Territory or the District of Columbia from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.**

Case 3:22-cv-01092-RAM   Document 41   Filed 12/29/22   Page 9 of 18

Civil No. 22-1092(RAM)                                                    9

21 U.S.C. § 467e (emphasis added).

Chapter III Part 381 of Title IX of the Code of Federal Regulations contains the poultry products inspection regulations that implement the PPIA's provisions. Subpart N establishes labeling requirements for containers of poultry products. Containers for inspected and passed poultry products must bear legible labels on the principal display that contain the information as required and outlined by subpart N in great detail. *See* 9 C.F.R. § 381.116. Specifically, the labels must identify the name, class and quantity of the product; any ingredients or additives; identification of the manufacturer, packer or distributor; the official inspection legend and establishment number where the product was inspected; any specific dietary food properties; the applicable special handling label requirements; and the packing and processing date. *See* 9 C.F.R. §§ 381.117-126. Relevant to the case at bar, 9 C.F.R. § 381.125(a) provides:

> Packaged products which require special handling to maintain their wholesome condition shall have prominently displayed on the principal display panel of the label the statement: "Keep Refrigerated," "Keep Frozen," "**Keep Refrigerated or Frozen**," "Perishable—Keep Under Refrigeration," or such similar statement as the Administrator may approve in specific cases. The immediate containers for products that are frozen during distribution and intended to be thawed prior to or during display for sale shall bear the statement "Shipped/Stored and Handled Frozen for Your Protection, Keep Refrigerated or Freeze."

In addition to identifying what information the labels must include, the PPIA's accompanying regulations also dictates what information is impermissible on a label. 9 C.F.R. § 381.129(a) specifies that:

> No poultry product subject to the Act shall have any false or misleading labeling or any container that is so made, formed, or filled as to be misleading. However, established trade names and other labeling and containers which are not false or misleading and which are approved by the Administrator in the regulations or in specific cases are permitted.

§ 381.129(b) provides several examples of what constitutes false or misleading statements, including:

> A raw poultry product whose internal temperature has ever been below 26 °F may not bear a label declaration of "fresh." A raw poultry product bearing a label declaration of "fresh" but whose internal temperature has ever been below 26 °F is mislabeled"
>
> […]
>
> Raw poultry product whose internal temperature has ever been at or below 0°F must be labeled with the descriptive term "frozen," except when such labeling duplicates or conflicts with the labeling requirements in § 381.125 of this subchapter.

Id. § 381.129(b)(6)(i)-(ii).

It is also worth noting that labels can only be used once they have been submitted and approved by the FSIS or if they are one of the generically approved labels authorized by the regulations. *See* 9 C.F.R. §§ 412.1-2.

### C. Regulation 8

Article XIV of Regulation 8 specifies the labeling requirements for "[e]very container and wrapping used for the packing poultry meat that imported or marketed in Puerto Rico[.]" Specifically, the label must contain "[t]he term 'maintain refrigerated,' if the product is fresh (26°F to 36°F)" or "[t]he term 'maintain frozen' if the product is frozen (0°F to 10°F). *See* Article XIV(A)(4)-(5). Article XIV(A)(6) provides that "[t]he terms 'maintain refrigerated' and 'maintain frozen' may not be used in the labeling of the same package."

## IV. DISCUSSION

NWS seeks injunctive relief on the basis that the PPIA preempts the PRDA's authority to impose distinct labeling requirements via Regulation 8. When a party "claims federal law immunizes [them] from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 326, 135 (2015) (citing Ex parte Young, 209 U.S. 123, 155-156 (1908)).

When faced with a motion for a preliminary injunction, district courts must assess the following four elements:

> (1) the likelihood of success on the merits;
> (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction

>    issues; and (4) the effect (if any) of the
>    court's ruling on the public interest.

Charlesbank Equity Fund II v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004) (quoting Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir. 1996)).

### A. Likelihood of success on the merits

The "likelihood of success" factor "is 'the touchstone of the preliminary injunction inquiry.'" Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quoting Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 674 (1st Cir. 1998)). If said likelihood cannot be demonstrated by the moving party "the remaining factors become matters of idle curiosity." Id. (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).

Although the PPIA permits some concurrent jurisdiction and enforcement, § 467(e) contains an "express preemption provision" which prohibits states and territories from imposing marking, labeling, packaging or ingredient requirements in addition to or different than those required by the PPIA and its accompanying regulations. *See* La Vigne v. Costco Wholesale Corp., 772 F. App'x 4, 5 (2d Cir. 2019). *See also* Nat'l Broiler Council v. Voss, 44 F.3d 740, 746 (9th Cir. 1994) ("Although the PPIA allows for concurrent state jurisdiction with regards to certain aspects of poultry regulations, that is not the case with the labels required

for poultry products under the act. . . T**he pre-emption clause as to labeling requirements evinces no such intent and uses no such language.**") (emphasis added).[2]

As this District has previously held, "[t]here is no doubt that Congress, pursuant to § 467e, intended to preempt requirements imposed by the state [or territory] which are 'in addition to' or 'different from' the 'marking' requirements established in the PPIA." Munoz, 106 F. Supp. 2d at 229. The same conclusion must be reached with regards to labeling requirements. 9 C.F.R. § 381.125 expressly authorizes labels with the statement "Keep Refrigerated or Frozen[.]" However, such language is prohibited under any circumstances by Regulation 8, Article XIV(A)(6). Therefore, Article XIV(A)(6) impermissibly imposes requirements which are "different from" the labeling requirements established pursuant to the PPIA.

Furthermore, per 9 C.F.R. § 412.1(a), labels must be submitted for approval to the FSIS before being used. Thus, in order to comply with Article XIV(A)(6), NWS would have to modify its label that were approved by the FSIS. *See, e.g.,* Webb v. Trader Joe's Co., 999 F.3d 1196, 1201-02 (9th Cir. 2021) ("Requiring Trader Joe's to change its labeling ... would require changes to

---

[2] Defendants rely mostly on Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra, 870 F.3d 1140, 1152 (9th Cir. 2017), but it is inapposite, as it addresses concurrent state regulations under the PPIA but in matters distinct from labeling requirements.

poultry labels that were approved by FSIS. Because Webb's state law claims seek to impose requirements "in addition to" those outlined in the PPIA, her claims are preempted.").

In light of the above and given the PPIA's express preemption with regards to labeling requirements, Plaintiffs have established a likelihood of success on the merits. Thus, this factor favors the issuance of a preliminary injunction baring the PRDA form enforcing the preempted labeling regulation at Article XIV(A)(6). However, what remains impermissible under both the PPIA and Article XIV(A) is labeling a poultry product whose internal temperature has ever been below 26º F as *fresh*.

**B. Irreparable harm**

Within the preliminary injunction context, irreparable harm "means an injury that cannot adequately be compensated either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." Rio Grande Community Health Center, Inc. v. Rullan*,* 397 F.3d 56 (1st Cir. 2005). In other words, irreparable harm exists when traditional legal remedies are inadequate. *See* Doble Seis Sport TV, Inc. v. Puerto Rico (D.P.R. 2019) (quoting Kmart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 915 (1st Cir. 1989)); Ross-Simons of Warwick, Inc., 102 F.3d at 18 ("It is usually enough if the plaintiff shows that its legal remedies are inadequate."). Furthermore, the articulated irreparable harm must be "likely and imminent, not

Case 3:22-cv-01092-RAM   Document 41   Filed 12/29/22   Page 15 of 18

Civil No. 22-1092(RAM)                                                    15


remote or speculative." N.A.A.C.P., Inc. v. Town of E. Haven, 70 F.3d 219, 224 (2d Cir. 1995).

Once a law or regulation is deemed to be preempted, a plaintiff "is likely to experience irreparable harm by having to choose between following federal law, which opens [them] up to liability under state law, or complying with an unconstitutional state law." Maine Forest Prod. Council v. Cormier, 586 F. Supp. 3d 22, 62-63 (D. Me.), aff'd, 51 F.4th 1 (1st Cir. 2022). *See also* Siembra Finca Carmen, LLC., 437 F. Supp. 3d at 137. (finding that the plaintiff "demonstrated that it is likely to suffer irreparable harm in the absence of an injunction forbidding PRDA from continuing to enforce preempted laws."). In the case at bar, the harm is not speculative, as Regulation 8's labeling requirements are actively being enforced and thousands of pounds of poultry products are currently being detained pursuant to its preempted provisions. (Fact ¶ 16). Therefore, this factor also favors a preliminary injunction.

**C. Balance of hardships**

When examining this third factor, "the Court must weight 'the hardship that will befall the nonmovant if the injunctions issues [...] with the hardship that will befall the movant if the injunction does not issue.'" Am. Cruise Ferries, Inc. v. Vazquez Garced, 2020 WL 7786939, at *15 (D.P.R. 2020) (quoting Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 671 F.3d 12, 19 (1st Cir.

2011)). As this District has previously held, there is no convincing argument to explain why a government agency's interests "are harmed by the inability to continue enforcing preempted laws." Siembra Finca Carmen, LLC., 437 F. Supp. 3d at 137. *See also* CTIA - The Wireless Ass'n v. Telecommunications Regul. Bd. of Puerto Rico, 2012 WL 12845587, *3 (D.P.R. 2012), report and recommendation adopted (quoting Legend Night Club v. Miller, 637 F.3d 291, 302-03 (4th Cir. 2011)) ("Generally, a state 'is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions.'"). Conversely, NWS faces irreparable harm. Therefore, the balance of hardships favors Plaintiff.

**D. Public interest**

The public interest which the fourth factor refers to is "the public interest in the issuance of *the injunction itself."* Braintree Labs., Inc. v. Citigroup Global Markets, Inc., 622 F.3d 36, 45 n.8 (1st Cir. 2010)) (emphasis in original). When analyzing this factor, the Court looks towards "a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). "Just as a government has no interest in enforcing an unconstitutional law, the public interest is harmed by the enforcement of laws repugnant to the United States Constitution." Siembra Finca Carmen, LLC., 437 F. Supp. 3d at 137. Moreover, the public has a strong interest in

avoiding shortages of key food items such as poultry products. Therefore, all four factors favor the issuance of a preliminary injunction.

## V.   CONCLUSION

In sum, this is a case about whether Puerto Rico law can circumvent federally mandated common-sense advice on handling raw poultry products. Regulation 8, Article XIV(A)(6)'s absolute prohibition of labeling "Keep refrigerated or frozen" is directly at odds with, and **thus preempted by,** the PPIA and regulations issued thereunder. Given that all four relevant factors favor Plaintiff, their request for a preliminary injunction at Docket No. 35 is **GRANTED.**

Therefore, Defendants Ramón González-Beiró, Secretary of the Puerto Rico Department of Agriculture, and Alex Muñiz-Lasalle, the Deputy Secretary of the Puerto Rico Department of Agriculture, as well as their officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with them, are hereby **enjoined from enforcing Article XIV(A)(6)'s absolute prohibition of labels stating "Keep Refrigerated or Frozen" for the duration of this litigation.** Accordingly, **all poultry products currently detained pursuant to said enforcement must be released.**

However, both Article XIV(A)(4)-(5) and 9 C.F.R § 381.129(b)(6)(i)-(ii) prohibit products that have been frozen

(*i.e.*, below a temperature of 26°F) from being labeled as fresh. While the PRDA cannot conclusively prohibit labels containing the phrase "keep refrigerated or frozen" it can enforce FSIS Regulations prohibiting false and misleading advertising of freshness. Thus, the preliminary injunction does not constitute a limitation on the PRDA's enforcement of Regulation 8 provisions that are identical to federal regulations.

Pursuant to Fed. R. Civ. P. 65(c) and given the lack of evidence of harm to the nonmovants, Plaintiff **SHALL** deposit a bond for the nominal amount of $1,000.00 as security with the Clerk of Court within five (5) days of entry of this Order.

**IT IS SO ORDERED.**

In San Juan Puerto Rico, this 29th day of December 2022.

<div style="text-align:right">S/ RAÚL M. ARIAS-MARXUACH<br>United States District Judge</div>