**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

NORTHWESTERN SELECTA, INC.

> **Plaintiff**

> v.

SECRETARY OF THE DEPARTMENT
AGRICULTURE OF PUERTO RICO,
Ramón Gonzalez Beiró, and DEPUTY
SECRETARY OF THE DEPARTMENT OF
AGRICULTURE OF PUERTO RICO, Alex
Muñiz Lasalle.

> **Defendants**

**CIVIL NO.** 22-1092(RAM)

**OPINION AND ORDER REGARDING PERMANENT INJUNCTION**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Plaintiff Northwestern Selecta, Inc's ("Plaintiff" or "NWS") request for declaratory judgment and permanent injunction as articulated in its *Complaint for Declaratory Judgment and Preliminary and Permanent Injunction* and subsequent motions for emergency relief. (Docket Nos. 1, 35 and 46). For the following reasons, Plaintiff's request for a permanent injunction is **GRANTED**.

## I.   BACKGROUND

Plaintiff filed a *Verified Complaint* against the Secretary and Deputy Secretary of the Puerto Rico Department of Agriculture ("PRDA"), Ramón González-Beiró and Alex Muñiz-Lasalle, respectively ("Defendants"), seeking injunctive and declaratory

relief from PRDA Market Regulation No. 8, registered with the Puerto Rico Department of State as Regulation No. 8764, titled "To Govern the Quality and Marketing of Poultry Meat in the Commonwealth of Puerto Rico" ("Regulation No. 8" or "Regulation No. 8764"). (Docket No. 1).

Plaintiff argues that Regulation No. 8, which purportedly governs the quality and marketing of poultry meat in Puerto Rico, is preempted by the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451-469, and the regulations promulgated thereunder by the Food Safety and Inspection Service ("FSIS"). Id. ¶¶ 1, 28, 31. NWS specifically challenges Articles XIV(A)(6) and XII(B) of PRDA's Regulation No. 8 for imposing requirements "in addition to, or different than" those established by the PPIA. Id. ¶ 31. Article XIV(A)(6) prohibits imported poultry from being labeled as "Keep Refrigerated or Frozen" despite the fact that FSIS regulation at 9 C.F.R. § 381.125(a) allows such labeling. Id. ¶¶ 32, 34. Similarly, Plaintiff asserts that Article XII(B) imposes additional "re-inspection" requirements beyond those established by PPIA and FSIS regulations. Id. ¶ 48-56.

Pursuant to this Court's order at Docket No. 6, the parties filed joint factual and document stipulations. (Docket No. 14-1). Plaintiff filed a *Memorandum in Support of Request for Injunction*

and Defendants filed a brief in opposition. (Docket Nos. 23 and 24).

Subsequently, NWS filed the present *Motion Requesting Emergency Relief* notifying the Court that the PDRA detained over 40,000 lbs of poultry products for containing the label "Keep refrigerated or frozen". (Docket No. 35). Plaintiff asked the Court to issue the proposed permanent injunction as requested in the *Verified Complaint* or alternatively issue an order, *i.e.,* preliminary injunction, barring the PRDA from enforcing Regulation No. 8's provisions regarding the labeling and packaging of poultry products until the Court issues a ruling resolving the case. Id. ¶¶ 11-12.

On December 29, 2022, the Court granted a preliminary injunction barring the enforcement of PRDA, Article XIV(A)(6) labeling and marketing requirements. (Docket No. 41). The Court found that the prohibition of labeling "Keep refrigerated or frozen" was directly at odds with and preempted by the PPIA and the regulations issued. Id.

On January 31, 20223, Plaintiff subsequently filed a *Motion Requesting Emergency Relief* to extend the preliminary injunction to the PRDA's enforcement and implementation of Article XII(B). (Docket No. 46). Plaintiff informed the Court that the PRDA's

implementation of Article XII(B) has disrupted the orderly and timely operations of NWS. Id. at ¶¶ 12.

## II.  FINDINGS OF FACT

Having analyzed the relevant pleadings on the docket, and the stipulations filed by the parties, the Court makes the following findings of fact[1]:

1.  The NWS facilities located at 769 Calle C, Mario Juliá Industrial Park, San Juan, Puerto Rico 00920 are certified as an "official establishment" by the United States Department of Agriculture. (Docket No. 14-1 ¶ 1).

2.  NWS imports fresh and frozen poultry products domestically from the United States, as well as frozen poultry products from foreign countries. Id. ¶ 2.

3.  Most NWS shipping containers containing poultry products also contain other food products. Id. ¶ 3.

4.  All importers, including NWS, provide copies of bills of lading and inform the PRDA of the contents of the cargo shipping containers that arrive to the Port of San Juan. The bills of lading do not inform the PRDA of product conditions upon arrival. Only a visual inspection of the product shows the product condition upon arrival. All

---

[1] References to a specific Finding of Fact shall be cited in the following manner: (Fact ¶ _).

poultry products that NWS imports from within the United States have already passed inspection on the mainland by the U.S. Department of Agriculture ("USDA") and bear an official mark to that effect. Id. ¶ 4.

5. PRDA detained fresh poultry products shipped from the United States by NWS bearing the label "Keep Refrigerated or Frozen" and did not allow NWS to distribute the products in Puerto Rico unless they were re-labeled with a label that reads "Keep Refrigerated" or "Keep Frozen." Id. ¶ 5.

6. On December 7, 2021, the PRDA Deputy Secretary, through its inspectors, issued several Orders of Detention impounding over 7,000 pounds of fresh poultry products at the NWS facilities which had been imported from the United States by NWS. The grounds for the Order of Detention were that the products were labeled as "Keep Refrigerated or Frozen" in violation of Article XIV(A)(6) of Regulation No. 8. Id. ¶ 6.

7. On June 30, 2021, the PRDA Deputy Secretary, through its inspectors, also issued several Orders of Detention, impounding over two hundred thousand (200,000) pounds of fresh poultry products imported by NWS from within the United States. The grounds for the Orders of Detention were that a PRDA inspector was not physically present when the

shipping container containing the products was opened and unloaded at the NWS facilities, asserting a violation of Article XII(B) of Regulation No. 8. Id. ¶ 7.

8. Since June 2021 and through March 2022, the PRDA Deputy Secretary has: (a) issued Notices of Violation against NWS with respect to thirty-five (35) shipping containers containing poultry products imported from within the U.S. that have been opened and unloaded at the NWS Facilities without the presence of a PRDA inspector, and (b) asserted the right to impose fines of approximately $263,000 against NWS. Id. ¶ 8.

9. The Deputy Secretary would not rescind the Notices of Violation and continued to assert the right not to allow NWS to open and unload shipping containers containing poultry products imported from within the United States at the NWS facilities without the presence of a PRDA inspector. Id. ¶ 9.

10. The USDA and the FSIS do not require that a USDA-FSIS inspector be present when NWS opens and unloads shipping containers containing poultry products imported from within the United States at the NWS facilities. Id. ¶ 10.

11. Prior to June 2021, PRDA had not enforced nor sought to enforce Article XII(B) of Regulation No. 8 against NWS. Id. ¶ 11.

12. On June 30, 2021, Agronomist Jaime Traverso visited the NWS facilities located in San Juan, Puerto Rico. At the moment of the visit, the containers subject to inspection had been opened and its contents unloaded. The PRDA issued Detention Orders 10395, 10396, 10397, 10398, 10399 and 10400. Id. ¶ 12.

13. On June 30, 2021, Alex Muñiz, acting as Deputy Secretary for Agro-Commercial Integrity, notified NWS that it had violated Regulation No. 8764, and the PRDA's intent to fine NWS with $500.00 fines for each violation. Id. ¶ 13.

14. On July 1, 2021, the PRDA rescinded the detention orders. The detained product entered commerce. Id. ¶ 14.

15. On July 20, 2021, NWS filed a motion to reconsider with the PRDA where Plaintiff argued, among other grounds, that Regulation No. 8764 was preempted by federal law and regulations. Id. ¶ 15.

16. On August 19, 2021, the PRDA vacated without prejudice the notices of violations. Id. ¶ 16.

17. On August 30, 2021, the PRDA issued a notice of violation and an order to NWS to show cause why it should not be held in violation of Regulation No. 8764. Id. ¶ 17.

18. On September 14, 2021, NWS filed its motion showing cause where it argued, among other grounds, that Regulation No. 8764 was preempted by federal law and regulations. Id. ¶ 18.

19. On October 14, 2021, the PRDA issued a resolution and order that denied the motion showing cause and imposed the fines for each violation to Regulation No. 8764. Id. ¶ 19.

20. On November 15, 2021, NWS requested reconsideration with respect to the October 14, 2021 resolution and order, reiterating that the fines were preempted by federal law. Id. ¶ 20.

21. On January 10, 2022, the PRDA filed its answer to the administrative complaint. In it, PRDA asserted, among other things, that the administrative forum was "not the adequate forum" to resolve NWS's claims of federal preemption. Id. ¶ 21.

22. On January 20, 2022, the PRDA's examining officer issued an order slating an initial scheduling conference for February 2, 2022. Id. ¶ 22.

23. On February 2, 2022, an initial scheduling hearing was held. Id. ¶ 23.

24. On December 15, 2022, the PRDA issued an Order for Detention notifying NWS that the PRDA had detained 908 boxes of full chicken totaling 49,761.11 pounds for failing to comply with Regulation No. 8's labeling requirements because the chickens' individual packaging contained the terms "keep frozen or refrigerated." (Docket No. 30-1).

### III. APPLICABLE LAW

**A. Declaratory judgment**

The Declaratory Judgment Act ("DJA") provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

The First Circuit has repeatedly explained that the DJA "neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies. In other words, declaratory relief, both by its very nature and under the plain language of 28 U.S.C. § 2201, is discretionary." El Dia, Inc. v.

Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992); *see also* Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st Cir. 1995).

When exercising this discretion, courts must consider whether a declaratory judgment will (1) "help clarify the legal questions at issue[;]" and (2) "relieve the uncertainty or insecurity that gave rise to the dispute" or otherwise "expedite resolution of the underlying dispute." Metro. Prop. & Liab. Ins. Co. v. Kirkwood, 729 F.2d 61, 62 (1st Cir. 1984); *see also*, Cadillac Unif. & Linen Supply, Inc. v. Cent. Gen. de Trabajadores, 2020 WL 4289389, at *6 (D.P.R. 2020), *report and recommendation adopted sub nom.* Cadillac Uniforms & Linen Supply, Inc. v. Cent. Gen. de Trabajadores, 2020 WL 4289365, at *1 (D.P.R. 2020) (quotation omitted) (finding that declaratory judgment is favored when it serves a useful purpose in clarifying and settling the legal relations in issue and will terminate and provide relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.").

## B. Preemption

The Supremacy Clause of the United States Constitution states that:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound

> thereby, any Thing in the Constitution or Laws
> of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2. By virtue of this clause, "the Constitution provides Congress with the power to pre-empt [sic] state law." Louisiana Pub. Serv. Comm'n v. F.C.C., 476 U.S. 355, 357 (1986). However, "[f]ederal law is presumed not to have preemptive effect, and that presumption is overcome 'only in the face of clear and contrary congressional intent.'" Siembra Finca Carmen, LLC. v. Sec'y of Dep't of Agric. of Puerto Rico, 437 F. Supp. 3d 119, 127 (D.P.R. 2020) (quoting Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 323 (1st Cir. 2012). See also Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142 (1963).

Congress may indicate its intent to preempt state law or regulations "through a statute's express language or through its structure and purpose." Altria Grp., Inc. v. Good, 555 U.S. 70, 76 (2008). Accordingly, a federal statute can preempt state law in one of three ways: (1) express preemption, whereby "congressional intent to preempt state law is made explicit in the language of a federal statute[;]" (2) field preemption, when "federal regulation in a legislative field is so pervasive that congressional intent allows no inference that it left room for the states to supplement it[;]" or (3) conflict preemption, which may arise "when it is impossible to comply with both federal and state law" or "when the state law stands as an obstacle to achieving the objectives of

federal law." <u>In re Allied Fin., Inc.</u>, 572 B.R. 45, 52–53 (Bankr. D.P.R. 2017) (citations omitted). *See also* <u>Siembra Finca Carmen, LLC.</u>, 437 F. Supp. 3d at 127–28.

**C. The PPIA and related federal regulations**

The general purpose of the PPIA is "to provide for the inspection of poultry and poultry products and to regulate their processing and distribution to prevent the movement or sale in interstate or foreign commerce of such products which are adulterated or misbranded." <u>Nw. Selecta, Inc. v. Munoz</u>, 106 F. Supp. 2d 223, 228 (D.P.R. 2000) (citing 21 U.S.C. § 452).

In its relevant part, the PPIA's preemption clause provides:

> **Requirements within the scope of this chapter with respect to premises, facilities and operations of any official establishment which are in addition to, or different than those made under this chapter may not be imposed by any State or Territory** or the District of Columbia, except that any such jurisdiction may impose recordkeeping and other requirements within the scope of paragraph (b) of section 460 of this title, if consistent therewith, with respect to any such establishment. **Marking, labeling**, packaging, or ingredient **requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter may not be imposed by any State or Territory** or the District of Columbia **with respect to articles prepared at any official establishment** in accordance with the requirements under this chapter, **but any State or Territory** or the District of Columbia **may, consistent with the requirements under this**

**chapter exercise concurrent jurisdiction with the Secretary over articles required to be inspected under this chapter for the purpose of preventing the distribution for human food purposes of any such articles which are adulterated or misbranded** and are outside of such an establishment, or, in the case of imported articles which are not at such an establishment, after their entry into the United States. **This chapter shall not preclude any State or Territory or the District of Columbia from making requirement or taking other action, consistent with this chapter, with respect to any other matters regulated under this chapter.**

21 U.S.C. § 467e (emphasis added).

>    i.   Federal labeling regulations

Chapter III Part 381 of Title IX of the Code of Federal Regulations contains the poultry products inspection regulations that implement the PPIA's provisions. Subpart N establishes labeling requirements for containers of poultry products. Containers for inspected and passed poultry products must bear legible labels on the principal display that contain the information as required and outlined by subpart N in great detail. *See* 9 C.F.R. § 381.116. Specifically, the labels must identify the name, class, and quantity of the product; any ingredients or additives; identification of the manufacturer, packer, or distributor; the official inspection legend and establishment number where the product was inspected; any specific dietary food properties; the applicable special handling label requirements;

and the packing and processing date. *See* 9 C.F.R. §§ 381.117-126.

Relevant to the case at bar, 9 C.F.R. § 381.125(a) provides:

> Packaged products which require special
> handling to maintain their wholesome condition
> shall have prominently displayed on the
> principal display panel of the label the
> statement: "Keep Refrigerated," "Keep
> Frozen," "**Keep Refrigerated or Frozen**,"
> "Perishable—Keep Under Refrigeration," or
> such similar statement as the Administrator
> may approve in specific cases. The immediate
> containers for products that are frozen during
> distribution and intended to be thawed prior
> to or during display for sale shall bear the
> statement "Shipped/Stored and Handled Frozen
> for Your Protection, Keep Refrigerated or
> Freeze."

In addition to identifying what information the labels must

include, the PPIA's accompanying regulations also dictates what

information is impermissible on a label. 9 C.F.R. § 381.129(a)

specifies that:

> No poultry product subject to the Act shall
> have any false or misleading labeling or any
> container that is so made, formed, or filled
> as to be misleading. However, established trade
> names and other labeling and containers which
> are not false or misleading and which are
> approved by the Administrator in the
> regulations or in specific cases are permitted.

§ 381.129(b) provides several examples of what constitutes

false or misleading statements, including:

> A raw poultry product whose internal
> temperature has ever been below 26 °F may not
> bear a label declaration of "fresh." A raw
> poultry product bearing a label declaration of
> "fresh" but whose internal temperature has
> ever been below 26 °F is mislabeled"

> . . .
>
> Raw poultry product whose internal temperature
> has ever been at or below 0°F must be labeled
> with the descriptive term "frozen," except
> when such labeling duplicates or conflicts
> with the labeling requirements in § 381.125 of
> this subchapter.

Id. § 381.129(b)(6)(i)-(ii).

It is also worth noting that labels can only be used once they have been submitted and approved by the FSIS or if they are one of the generically approved labels authorized by the regulations. *See* 9 C.F.R. §§ 412.1-2.

### ii.   Federal inspection regulations

The FSIS has established that "inspection of poultry products shall be rendered pursuant to the regulations and under such conditions and in accordance with such methods as may be prescribed or approved by the Administrator." 9 C.F.R. § 381.4. Under the PPIA as well as FSIS regulations, inspection is required at any establishment where poultry is slaughtered for transportation or sale in commerce, or in which any poultry products are wholly or in part processed for transportation or sale in commerce. 21 U.S.C. § 458(a)(2); 9 C.F.R. § § 381.6, 381.145.

### D. Puerto Rico Regulation No. 8

### i.   Article XIV labeling requirements

Article XIV of Regulation No. 8 specifies the labeling requirements for "[e]very container and wrapping used for the packing poultry meat that imported or marketed in Puerto Rico[.]" (Docket No. 1-6 at 29). Specifically, the label must contain "[t]he term 'maintain refrigerated,' if the product is fresh (26°F to 36°F)" or "[t]he term 'maintain frozen' if the product is frozen (0°F to 10°F)." Id. at 30; See Article XIV(A)(4)-(5). Article XIV(A)(6) provides that "[t]he terms 'maintain refrigerated' and 'maintain frozen' may not be used in the labeling of the same package." Id.

ii.  Article XII(B) inspection requirements

Article XII(A) of Regulation No. 8 provides that "[a]ll poultry meat that is imported to be marketed in Puerto Rico, will be inspected upon its arrival by an officer of the Department, to corroborate that the same meets the requirements required in this Regulation." Id. at 27. Moreover, Article XII(B) requires that "[a]n official of the [PRDA] must be present at the time of opening and unloading the container." Id.

IV.  DISCUSSION

NWS seeks declaratory judgment and injunctive relief on the basis that the PPIA preempts the PRDA's authority to impose distinct labeling and inspection requirements via Regulation No. 8. When a party "claims federal law immunizes [them] from state

regulation, the court may issue an injunction upon finding the state regulatory actions preempted." Armstrong v. Exceptional Child Ctr., Inc., 575 U.S. 320, 326, 135 (2015) (citing Ex parte Young, 209 U.S. 123, 155-156 (1908)). Declaratory relief is proper in this case as it will clarify the legal questions in controversy and eliminate the uncertainty underlying the present dispute. See Metro Prop. & Liab. Ins. Co., 729 F.2d at 62.

A party seeking permanent injunction must satisfy the following four-factor test:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Greene v. Ablon, 794 F.3d 133, 156-57 (1st Cir. 2015) (quoting CoxCom, Inc. v. Chaffee, 536 F.3d 101, 112 (1st Cir. 2008)).

**A. Irreparable harm**

Both Article XIV(A) and XII(B) of Regulation No. 8 are preempted by the PPIA. The PPIA's preemption clause prohibits states and territories from imposing additional or distinct requirements with regards to "premises, facilities and operations of any official establishment" and "marking, labeling, packaging

or ingredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce)." 21 U.S.C. § 467e. It is uncontested that NWS is an "official establishment" for purposes of the PPIA.[2] (Fact ¶ 1). Therefore, the question the Court is tasked with unscrambling is whether Regulation No. 8's labeling and inspection requirements fall within the scope of this preemption clause.

When determining the substance and scope of an express pre-emption clause, courts must assume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Ass'n des Éleveurs de Canards et d'Oies du Quebec v. Becerra, 870 F.3d 1140, 1146 (9th Cir. 2017) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Additionally, "[w]hen the text of an express pre-emption clause is susceptible of more than one plausible reading, courts ordinarily 'accept the reading that disfavors pre-emption.'" Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005).

As discussed at length in the Court's previous Opinion and Order granting a preliminary injunction, Regulation No. 8's

---

[2] It is worth noting, however, that the PPIA most directly regulates "official establishments," where the "inspection of the slaughter of poultry, or the processing of poultry products," occurs. 21 U.S.C. § 453(p); see also 9 C.F.R. § 381. Neither slaughter or processing occurs at NWS facilities and, therefore, they are not the kind of establishments that Congress sought to regulate most directly.

labeling provision is expressly preempted by the PPIA. (Docket No. 41 at 11-14). However, there is not a similar blanket preemption on all inspection requirements. The PPIA's preemption clause prohibits states and territories from imposing additional or distinct requirements with regards to "premises, facilities and operations of any official establishment" and "marking, labeling, packaging or ingredient requirements (or storage or handling requirements found by the Secretary to unduly interfere with the free flow of poultry products in commerce)." 21 U.S.C. § 467e.

Article XII(B) necessarily relates to NWS' operations, of which inspection is an integral part. Plaintiff asserts that compliance with this regulation affects distribution operations by causing delays and decreasing the shelf-life of imports, particularly when the PRDA inspector is untimely or fails to arrive completely.[3] (Docket No. 46 ¶ 5). Notably, other district courts have found that more remote regulations affect operations. *See, e.g.*, Johnson v. Tyson Foods, Inc., 2021 WL 5107723, at *6 (W.D. Tenn. 2021) (holding that "Tyson Foods' vaccination policy relates to its premises, facilities, and operations by ensuring that its employees are protected from COVID-19 infection; accordingly,

---

[3] The absence of PRDA inspectors is not speculative, given the PRDA's Administrative Order 2022-14 issued on June 21, 2022, recognizing the lack of sufficient inspectors, and thus ordering aleatory inspections of imported products. (Docket No. 33-1 at 3-6).

Plaintiff's claims fall within the scope of the PPIA" and are thus preempted).

The question thus becomes whether Article XII(B)'s inspection requirement falls within the exception outlined by the PPIA's preemption clause. As mentioned above, this clause also provides that:

> any State or Territory or the District of Columbia **may, consistent with the requirements under this chapter exercise concurrent jurisdiction** with the Secretary **over articles required to be inspected under this chapter for the purpose of preventing the distribution** for human food purposes of **any such articles which are adulterated or misbranded and are outside of such an establishment,** or, in the case of imported articles which are not at such an establishment, after their entry into the United States.

21 U.S.C. § 467e (emphasis added). Per the plain language of this section, the Commonwealth of Puerto Rico can exercise concurrent jurisdiction with regards to inspection items thar are either (1) adulterated or misbranded **and are outside of an official establishment;** or (2) imported articles **that are not at an official establishment** after their entry into the United States. Id. In both instances, the products are *outside* of official establishments. The poultry products imported by NWS **do not fall under either of these two categories.** NWS facilities are an official establishment that imports fresh and frozen poultry products domestically from within the United States, as well as

frozen poultry products from foreign countries. (Fact ¶ 2). Therefore, the poultry products they import are necessarily *inside* an official establishment. Accordingly, the PRDA lacks concurrent jurisdiction to impose inspection requirements with regards to these products and Article XII(B) is preempted.

### B. Absence of adequate remedies

An integral element in issuing a permanent injunction is the unavailability, or at least inadequacy, of legal remedies. *See* In re Willis, 411 B.R. 783, 786 (Bankr. S.D. Fla. 2009). As NWS explained, the detainment of thousands of pounds of poultry significantly affects their operations which cannot be solved by monetary damages. Furthermore, the damage to NWS's reputation and products caused by a delay in inspection cannot be solved through other legal or financial remedies.

### C. Balance of hardships

When balancing hardships courts must consider "the hardship that will befall the nonmovant if the injunctions issues . . . with the hardship that will befall the movant if the injunction does not issue." Mercado-Salinas v. Bart Enterprises Int'l, Ltd., 671 F.3d 12, 19 (1st Cir. 2011)). As the Court noted in its previous Opinion and Order, a government agency's interests cannot be harmed "by the inability to continue enforcing preempted laws." Siembra Finca Carmen, LLC., 437 F. Supp. 3d at 137. *See also* CTIA - The

Wireless Ass'n v. Telecomm. Regul. Bd. of Puerto Rico, 2012 WL 12845587, *3 (D.P.R. 2012), *report and recommendation adopted* (quoting Legend Night Club v. Miller, 637 F.3d 291, 302-03 (4th Cir. 2011)) ("Generally, a state 'is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions.'"). By contrast, NWS faces irreparable harm. Therefore, the balance of hardships favors a permanent injunction.

### D. Public interest

The public interest which the fourth factor refers to is "the public interest in the issuance of *the injunction itself."* Braintree Labs., Inc. v. Citigroup Glob. Mkts, Inc., 622 F.3d 36, 45 n.8 (1st Cir. 2010)) (emphasis in original). When analyzing this factor, the Court looks towards "a fit (or lack of friction) between the injunction and the public interest." NuVasive, Inc. v. Day, 954 F.3d 439, 443 (1st Cir. 2020). "Just as a government has no interest in enforcing an unconstitutional law, the public interest is harmed by the enforcement of laws repugnant to the United States Constitution." Siembra Finca Carmen, LLC., 437 F. Supp. 3d at 137. Moreover, the public has a strong interest in avoiding shortages of key food items such as poultry products. Therefore, all four factors favor the issuance of a permanent

injunction barring the application of Article XIV(A)'s labeling requirements and Article XII(B)'s PRDA inspector requirement.

## V.   CONCLUSION

In light of the above, Plaintiff's request for a Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Permanent Injunction are **GRANTED**. The Court hereby **DECLARES** that Articles XII(B) and XIV(A)(6) of Puerto Rico Department of Agriculture Regulation No. 8764 (Market Regulation No. 8), are preempted by Section 467(e) of the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451-469.

Accordingly, the Court hereby **GRANTS** permanent injunctive relief and thus Defendants Ramón González-Beiró, Secretary of the Puerto Rico Department of Agriculture, and Alex Muñiz-Lasalle, the Deputy Secretary of the Puerto Rico Department of Agriculture, as well as their officers, agents, servants, employees, attorneys and any other persons who are in active concert or participation with them, are **hereby ENJOINED from:**

A. Enforcing Articles XII(B) and XIV(A)(6) of Regulation No. 8 against Northwestern Selecta;

B. Enforcing or giving effect to Article XIV(A)(6) of Regulation No. 8 that imposes requirements with respect to marking, labeling, packaging, or ingredients that are in addition to, or different than those made under the PPIA;

C.  Enforcing or giving effect to Article XII(B) of Regulation No. 8 requiring that a PRDA inspector be physically present when shipping containers are opened and unloaded in official establishments; and

D.  Detaining imported poultry products or levying sanctions (including suspension or revocation of any license issued by the Puerto Rico Department of Agriculture, or failure to renew the same) against Northwestern Selecta for failure to comply with Articles XII(B) and/or XIV(A)(6) of Market Regulation No. 8.

This permanent injunction does not constitute a limitation on the PRDA's enforcement of Regulation No. 8 provisions that are identical to federal regulations.

Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of June 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge